J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
FORSHEY & PROSTOK LLP
777 Main St., Suite 1550
Fort Worth, TX  76102
Telephone: 817-877-8855
Facsimile:  817-877-4151
bforshey@forsheyprostok.com
llankford@forsheyprostok.com

PROPOSED ATTORNEYS FOR THE
DEBTOR AND DEBTOR-IN-POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| SANOTECH 360, LLC, | ) | Case No. 23-40261-elm11 |
| | ) | |
| | ) | |
| Debtor. | ) | **Emergency Hearing Requested** |

## DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND
## FINAL ORDERS AUTHORIZING THE USE OF CASH
## COLLATERAL AND GRANTING ADEQUATE PROTECTION

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW SanoTech 360, LLC ("SanoTech" or the "Debtor"), as debtor-in-possession, and pursuant to Bankruptcy Rule 4001(b), files *Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* (the "Motion").  In support of the Motion, the Debtor respectfully states as follows:

### JURISDICTION AND VENUE

1.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This case and all related matters have been referred to this Court pursuant to 28 U.S.C. § 157.  This Motion constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), (M) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.       On January 29, 2023 (the "Petition Date"), the Debtor filed a voluntary petition

pursuant to Chapter 11 of the Bankruptcy Code.

3.       The Debtor continues to manage and operate its business as a debtor in

possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner,

or committee has been appointed in this case.

## ABOUT THE DEBTOR

4.       The Debtor manufactures high-quality, "smart" advanced electrostatic sprayers

designed to apply disinfectant more efficiently than conventional methods.

5.       The Debtor's business originated through E-Mist Innovations, Inc. ("E-Mist") in

2009 when a high school in Goldthwaith, Texas, was experiencing a severe outbreak of the

H1N1 flu virus. To avoid closing, the school needed a faster and more effective means to apply

disinfectant to the many surfaces in the facility.  Needing an innovative solution, the school's

administration turned to E-Mist's more efficient electrostatic sprayer as opposed to the

conventional, more labor-intensive methods. As a result, surfaces in the school became

healthier, children were able to return to class, and E-Mist was launched to help stop the spread

of unnecessary infections.

6.       During the early years of its operation, E-Mist faced an uphill battle in convincing

customers to abandon traditional, deeply entrenched disinfection protocols for innovative E-

Mist's products, despite the fact that E-Mist's products were more efficient in making spaces

healthier and safer for people. Prior to E-Mist's entry into the market, there were no instances of

the approval of wide area electrostatic disinfectant application by the Environmental Protection

Agency (EPA) or the World Health Organization (WHO).

7.       In 2014, E-Mist's products were used to disinfect the Dallas apartment of an

Ebola-stricken nurse and Texas Health Presbyterian Hospital in Dallas where the nurse had

contracted the Ebola virus treating a patient.  E-Mist received global recognition for this

achievement leading to a better understanding of the benefits of E-Mist's electrostatic

technology.  E-Mist then expanded and began the further development of better and more

efficient products.

8.      In early 2019 the assets of E-Mist were acquired by the Debtor.

9.      Then, on December 12, 2019, the world changed. A cluster of patients in China's

Hubei Province, in the city of Wuhan, began to experience the symptoms of an atypical

pneumonia-like illness that did not respond well to standard treatments. Soon, COVID-19 had

spread throughout the globe, disrupting activities across all economic sectors and industries.

On March 11, 2020, after more than 118,000 cases in 114 countries and 4,291 deaths, the

WHO declared COVID-19 a pandemic and turned the world upside down. As of December 9,

2022, more than 6,654,899 have died worldwide from COVID-19.

10.     The pandemic brought about global economic supply chain disruptions, including

trade restrictions, factory closures, increased freight rates, and global shortages of materials.

Companies around the world poured resources into stopping COVID-19 and finding new ways

to allow businesses to operate safely.  Out of necessity, this included changing the way people

cleaned and disinfected surfaces.  Indeed, in the first year of the pandemic, national health

expenditures rose to $4.1 trillion.  Not surprisingly, the demand for the Debtor's products

boomed.

11.     The COVID-19 pandemic created a virtually unlimited worldwide market for

disinfectant.  In early 2020, in response to demands arising from the COVID-19 outbreak, the

Debtor ramped up its production capacity to meet the unprecedented global demand for

disinfectants.  The Debtor's sales increased from less than $250,000 in 2019 to nearly $59.0

million in 2020 – a 23,813% increase in sales.  With no vaccine yet available, the Debtor and

many other companies, including Clorox and Proctor & Gamble, all greatly increased their

capacity to produce disinfectants, a costly process which included adding additional manufacturing capacity and hiring more people, to meet the then unlimited global demand for better and more efficient disinfectants.

12.     On August 23, 2021, the FDA formally approved the first COVID-19 vaccine which had become available under Emergency Use Authorization during late 2020 and early 2021.  The availability of the vaccines led to a chain of events which again significantly altered global economies and their response to COVID-19.  As the vaccination of the population became more common, the demand for sanitizers dropped significantly.  Within months, previously scarce commodities such as hand sanitizers, Clorox cleaning spray, and paper towels were readily available in excess quantities and, in many instances, available for free. The Debtor experienced the same drop in the demand for its products.

13.     The pandemic required many companies, including the Debtor, to build-up their inventory aggressively to meet demand. As demand tapered off, inventory-to-sales ratios fell below historical averages as more and more of the population became vaccinated. Because of this, the Debtor found itself with a massive inventory of product based on earlier orders and forecasts before the vaccines became widespread and world-wide demand crashed.  The Debtor must now store this excess inventory without any clear path to liquidating it so that the Debtor may generate cash to fund operations and pay creditors.

14.     In response to these challenges, the Debtor has implemented a business strategy designed to help offload the excess inventory, reduce costs, and streamline operations. The Debtor has closed its manufacturing/distribution operations, reduced its workforce by 98%, and adjusted pricing to help reduce costs. Unfortunately, these measures were not enough. Ultimately, Debtor's management concluded that the best path for the company to move forward was to file a Chapter 11 reorganization case.  In the Chapter 11 case, the Debtor will continue to evaluate its business options to maximize the value of its assets and business.  This will likely

be done through a sale of the Debtor's business and substantially all of its assets pursuant to section 363 of the Bankruptcy Code.  In this regard, the Debtor will seek bankruptcy court authorization to retain SSG Advisors, LLC as its investment bankers to assist the Debtor with the marketing and sale of its business and assets.

### ONLY ONE PARTY ASSERTS AN INTEREST IN CASH COLLATERAL

15.     <u>Texas Bank and Trust Company</u>.  The Debtor is the borrower pursuant to a Revolving Loan and Security Agreement dated August 25, 2020 (the "<u>Loan Agreement</u>") for a $15 million loan (the "<u>Loan</u>") between SanoTech, as borrower, and Texas Bank and Trust Company ("<u>Texas Bank</u>" or "<u>Lender</u>"), as lender.  In connection with the Loan Agreement, the Debtor also executed a Revolving Note ("<u>Note</u>") dated August 25, 2020, in the original principal amount of Fifteen Million Dollars ($15,000,000.00), payable to Texas Bank.  The Loan was subsequently renewed, extended, and modified by a Loan Modification Agreement dated August 25, 2021 (the "<u>First Modification</u>"), a Loan Modification Agreement dated December 20, 2021 (the "<u>Second Modification</u>"), a Loan Modification Agreement dated June 25, 2022 (the "<u>Third Modification</u>"), a Loan Modification Agreement dated September 22, 2022 (the "<u>Fourth Modification</u>,") and a Fifth Loan Modification Agreement dated December 22, 2022 (the "<u>Fifth Modification</u>").  Pursuant to the Third Loan Modification, Texas Bank's funding commitment under the Loan was reduced to $9,272,414.00.  The Debtor estimates that it is currently obligated to Texas Bank pursuant to the Note in the approximate amount of $8.03 million.

16.     The Bank has filed two UCC-1 Financing Statements[1] asserting a blanket lien interest in the Debtor's assets, including its accounts.  Pursuant to its Financing Statements and

---

[1] Specifically, Texas Bank filed (i) a UCC-1 Financing Statement with the Texas Secretary of State on August 25, 2020 as Filing Number 20-0044878043, and (ii) a UCC-1 Financing Statement with the Texas Secretary of State on October 25, 2022 as Filing Number 22-0052241442.

relevant loan documents, Texas Bank asserts a security interest in various of the Debtor's

assets, including as applicable, the Debtor's cash and cash equivalents ("Cash Collateral").

## RELIEF REQUESTED

17.     Pursuant to this Motion and section 363(c) of the Bankruptcy Code, the Debtor

seeks interim and final orders authorizing the use of Cash Collateral.  The Debtor requests

authority to use Cash Collateral on an interim basis in accordance with the budget attached as

**Exhibit A** (the "Budget"), and in accordance with subsequent budgets hereafter approved by

the Court on a final basis.

18.     In addition, under sections 361 and 363(e) of the Bankruptcy Code, the Debtor

seeks to grant adequate protection to the Lender in the form of replacement liens in the Debtor's

assets that serve as prepetition collateral under Lender's applicable loan documents (the

"Prepetition Collateral") to the extent such lien interests in Prepetition Collateral are validly

perfected and not avoidable and to the extent that the Debtor's use of Cash Collateral results in

the diminution in value of Lender's interest in the Cash Collateral as of the Petition Date.

19.     The relief requested herein is necessary to prevent immediate and irreparable

harm to the Debtor's Chapter 11 estate and should provide sufficient funds to permit the Debtor

to continue to operate its business and to satisfy its payroll and other direct operating expenses.

The Debtor requests approval for the use of Cash Collateral in accordance with the Budget on

an interim basis (the "Interim Order") and thereafter on a permanent basis (the "Final Order").  A

copy of the Debtor's proposed Interim Order is attached hereto as **Exhibit B**.

## BASIS FOR RELIEF

20.     The Debtor submits that all secured creditors asserting a security interest in

Cash Collateral, including Texas Bank, are adequately secured by their collateral and by

replacement liens as provided herein.  The use of cash in deposit accounts and proceeds from

accounts receivable will allow the Debtor to pay essential operating expenses so that it may

continue operations and generate new receivables.  The Debtor anticipates that its receivables will retain their value during the bankruptcy case through continued operations.  Moreover, to the extent of any diminution in value of any valid security interest occasioned by the use of Cash Collateral, the Debtor proposes to grant replacement liens in post-petition accounts receivable and proceeds thereof in the same order of priority as presently existing in the Prepetition Collateral.

21.     The Debtor asserts that the interests of the secured creditors in Prepetition Collateral are adequately protected.  The Debtor's continued use of the Prepetition Collateral maximizes the position of all of the Debtor's creditors.  In the course of operations, the Debtor will continue to sell inventory and other assets, generate and collect new receivables, and use the proceeds for new services and operating expenses.  Such ongoing operations benefit valid secured creditors in that new accounts receivable will be created.

22.     The Company has no material source of ongoing income other than from its operations and the collection of accounts receivable.  At the present time, an immediate and critical need exists for the Debtor to be permitted access to funds in order to continue the operation of its business, to pay employees, and to protect its ability to reorganize in accordance with chapter 11 of the Bankruptcy Code.

23.     Pursuant to section 363(c)(2)(B) of the Bankruptcy Code, the Debtor requests that the Court authorize and approve the Debtor's use of Cash Collateral for the payment of operating expenses in accordance with the Budget and with subsequently approved budgets. To remain in possession of its property, to continue business activities, and to achieve a successful reorganization, the Debtor requests use of Cash Collateral in the Debtor's ordinary business operations.  The Debtor believes that payment of operating expenses is reasonable and that such payments will be for necessary business expenses that must be paid in order to continue the Debtor's business operations.

24.     In the event the Court does not authorize the Debtor's proposed use of Cash Collateral, the Debtor believes that the Debtor will be unable to maintain its current business operations and to confirm a plan of reorganization as contemplated by the Bankruptcy Code. Without the use of Cash Collateral, the Debtor will be seriously and irreparably harmed, resulting in significant losses to the Debtor's estate and its creditors.

25.     In filing this Motion, the Debtor does not admit that any creditor holds valid, perfected, enforceable or unavoidable prepetition liens and security interest in and to any of the Prepetition Collateral.  The Debtor does not waive the right to contest the validity, perfection, enforceability or avoidability of the any creditor claims, liens and security interests in and to the Prepetition Collateral.

## APPLICABLE AUTHORITY

26.     One of the Debtor's most pressing concerns is the need for immediate use of Cash Collateral pending a final hearing on this Motion.  Rule 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provide that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fifteen (15) days after the service of such motion.  *See* Fed. R. Bankr. P. 4001(b) and (c); 11 U.S.C. 363.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the restricted use of cash collateral to the extent necessary to avoid immediate and irreparable damage to the Debtor's estate.  The Debtor requires use of Cash Collateral to pay present operating expenses, including for payroll, rent and supplies to ensure a continued supply of goods and services essential to the Debtor's continued viability.

27.     The Debtor requests immediate authority to use the Cash Collateral to fund the Debtor's day-to-day operations.  Absent such relief, the Debtor will not be able to continue to operate its business.  In sum, failure to obtain authorization for the use of the Cash Collateral

will be disastrous to the Debtor and its creditors.  Entry of an order authorizing the use of Cash

Collateral will minimize disruption to the Debtor's business and operations and permit the

Debtor to meet payroll and other operating expenses.  Absent use of the Cash Collateral, the

Debtor's estate would not have sufficient funds to satisfy ongoing business obligations.

Allowing use of Cash Collateral, therefore, is in the best interest of the Debtor's estate.

28.    The use of Cash Collateral and the adequate protection proposed herein is fair

and reasonable under the circumstances, reflects the Debtor's exercise of prudent business

judgment, and is supported by reasonably equivalent value and fair consideration.  Also, the

adequate protection proposed herein in the form of replacement liens, in addition to existing

liens in the Prepetition Collateral, is sufficient to protect the interests of affected secured

creditors.  As such, the Debtor should be afforded protection equivalent to those provided in

section 364(e) of the Bankruptcy Code.

## **NOTICE**

29.    Notice of this Motion will be provided to (i) the Office of the United States Trustee

for the Northern District of Texas; (ii) all known secured creditors; (iii) the holders of the twenty

(20) largest unsecured claims against the Debtor; and (iv) parties requesting notice; all as set

forth below.  The Debtor submits that no further notice need be provided.

## **CONCLUSION**

30.    The relief requested herein should ensure that the Debtor's Chapter 11 estate

has sufficient resources to commence its Chapter 11 case and to provide a seamless transition

to operating the Debtor's business as a debtor-in-possession.  The Debtor requests that the

Court grant the Motion.

WHEREFORE, the Debtor respectfully requests that the Court (i) grant the Motion; (ii) enter an Interim Order permitting the Debtor to use Cash Collateral consistent with the Budget; (iii) after a final hearing on this Motion, enter a Final Order permitting the Debtor to use Cash Collateral on a final basis as provided herein; (iv) grant affected secured creditors replacement liens as provided herein; and (v) grant all such other and further relief as is just and proper.  A copy of the Debtor's proposed Interim Order is attached hereto as **Exhibit B**.

Dated: January 29, 2023.                               Respectfully submitted,


                                                       /s/ J. Robert Forshey
                                                       J. Robert Forshey
                                                       State Bar No. 07264200
                                                       Lynda L. Lankford
                                                       State Bar No. 11935020
                                                       FORSHEY & PROSTOK, L.L.P.
                                                       777 Main Street, Suite 1290
                                                       Fort Worth, Texas 76102
                                                       Phone: (817) 877-8855
                                                       Fax: (817) 877-4151
                                                       bforshey@forsheyprostok.com
                                                       llankford@forsheyprostok.com

                                                       PROPOSED ATTORNEYS FOR THE
                                                       DEBTOR AND DEBTOR-IN-POSSESSION


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served upon the office of the United States Trustee for the Northern District of Texas, the secured lenders, the holders of the twenty (20) largest unsecured claims against the Debtor, and parties filing a notice of appearance, at the addresses reflected on the attached Service List, via ECF electronic Notice, if available, on January 29, 2023 and via United States Mail, first class postage prepaid on January 30, 2023.


                                                       /s/ J. Robert Forshey
                                                       J. Robert Forshey


L:\BFORSHEY\SanoTech 360 Mtg #6345\Pleadings\Motion to use Cash Collateral 1.29.23.docx

# Exhibit A
# [Budget]

PROJECT HAIL LLC

**DBA: EMIST**
**CASH FLOW PROJECTION**

| | Jan 30 - Feb 5 | | Feb 6 - Feb 12 | | Feb 13 - Feb 19 | | Feb 20 - Feb 27 | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | BUDGET | ACTUAL | BUDGET | ACTUAL | BUDGET | ACTUAL | BUDGET | ACTUAL | BUDGET | ACTUAL |
| **Sales** | $ 22,500.00 | | $ 25,000.00 | | $ 22,500.00 | | $ 25,000.00 | | $ 95,000.00 | |
| | | | | | | | | | | |
| **Account Receivable Collections - Receipts** | $ 12,500.00 | | $ 22,000.00 | | $ 22,500.00 | | $ 20,000.00 | | $ 77,000.00 | |
| | | | | | | | | | | |
| **SUMMARY OF WEEKLY CASH OUTFLOW** | | | | | | | | | | |
| | | | | | | | | | | |
| Payroll Gross | $        - | | $ 13,469.23 | | $        - | | $ 13,469.23 | | $ 26,938.47 | |
| Employer Payroll Taxes | $        - | | $ 1,900.00 | | $        - | | $ 1,900.00 | | $ 3,800.00 | |
| Health Insurance | | | $ 2,856.00 | | | | $ 2,856.00 | | $ 5,712.00 | |
| Contract Labor | $ 1,500.00 | | $ 1,500.00 | | $ 1,500.00 | | $ 1,500.00 | | $ 6,000.00 | |
| Processing Repairs & Warranty Orders | $ 750.00 | | $ 750.00 | | $ 750.00 | | $ 750.00 | | $ 3,000.00 | |
| Warehouse Supplies | $ 500.00 | | $ 500.00 | | $ 500.00 | | $ 500.00 | | $ 2,000.00 | |
| Telephone Expense | $ 250.00 | | $ 250.00 | | $ 250.00 | | $ 250.00 | | $ 1,000.00 | |
| Waste Disposal | $ 200.00 | | $ 200.00 | | $ 200.00 | | $ 200.00 | | $ 800.00 | |
| Utilities | $ 450.00 | | $ 450.00 | | $ 450.00 | | $ 450.00 | | $ 1,800.00 | |
| Property Rent | | | $ 8,900.00 | | | | | | $ 8,900.00 | |
| Shipping Cost | $ 1,000.00 | | $ 1,000.00 | | $ 1,000.00 | | $ 1,000.00 | | $ 4,000.00 | |
| Inventory Storage Fees | $ 900.00 | | $ 900.00 | | $ 900.00 | | $ 900.00 | | $ 3,600.00 | |
| Insurance Cost | $ 1,000.00 | | $ 1,000.00 | | $ 1,000.00 | | $ 1,000.00 | | $ 4,000.00 | |
| Travel & Meals | $ 175.00 | | $ 175.00 | | $ 175.00 | | $ 175.00 | | $ 700.00 | |
| Marketing/Advertising | $ 300.00 | | $ 300.00 | | $ 300.00 | | $ 300.00 | | $ 1,200.00 | |
| Office Supplies | $ 125.00 | | $ 125.00 | | $ 125.00 | | $ 125.00 | | $ 500.00 | |
| Miscellaneous Cost | $ 750.00 | | $ 750.00 | | $ 750.00 | | $ 750.00 | | $ 3,000.00 | |
| | | | | | | | | | | |
| **Sub Total of Direct cost** | $ 7,900.00 | | $ 35,025.23 | | $ 7,900.00 | | $ 26,125.23 | | $ 76,950.47 | |
| | | | | | | | | | | |
| **Indirect Cost** | | | | | | | | | | |
| Professional Fees | $        - | | $        - | | $        - | | $ 5,000.00 | | $ 5,000.00 | |
| Trustee Fees | $        - | | $        - | | $        - | | $        - | | $        - | |
| Investment Banker Fees | $        - | | $        - | | $        - | | $ 20,000.00 | | $ 20,000.00 | |
| | | | | | | | | | $        - | |
| **Sub Total of Indirect cost** | $        - | | $        - | | $        - | | $ 25,000.00 | | $ 25,000.00 | |
| | | | | | | | | | | |
| **Total Disbursements** | $ 7,900.00 | | $ 35,025.23 | | $ 7,900.00 | | $ 51,125.23 | | $101,950.47 | |
| | | | | | | | | | | |
| Net Weekly Surplus / (deficit) | $ 4,600.00 | | $ (13,025.23) | | $ 14,600.00 | | $ (31,125.23) | | $ (24,950.47) | |
| | | | | | | | | | | |
| Beginning Balance of Cash | $ 32,550.00 | | $ 37,150.00 | | $ 24,124.77 | | $ 38,724.77 | | | |
| | | | | | | | | | | |
| Projected Cash Balance | $ 37,150.00 | | $ 24,124.77 | | $ 38,724.77 | | $ 7,599.53 | | | |

# Exhibit B
# [Proposed Interim Order]

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case |
| | ) | |
| SANOTECH 360, LLC, | ) | Case No. 23-40261-elm11 |
| | ) | |
| | ) | |
| Debtor. | ) | |

**INTERIM ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS AUTHORIZING THE USE OF CASH
COLLATERAL AND GRANTING ADEQUATE PROTECTION**

On this day the Court considered the *Debtor's Emergency Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* [Docket No. ___] (the "Motion")[1] filed by SanoTech 360, LLC (the "Debtor").  Having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is necessary to avoid immediate and irreparable harm; and based on the evidence presented and the arguments of counsel at a hearing on the Motion, the Court hereby finds:

---

[1] Any capitalized terms not otherwise defined herein have the meaning ascribed to such terms in the Motion.

On January 29, 2023 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Code") in this Court. The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Code.

This Court has jurisdiction over this case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

The Debtor asserts that it will suffer irreparable and immediate harm if it is not granted the relief herein. The Debtor further asserts that an immediate and critical need exists for the Debtor to use funds in order to continue the operation of its business and that, without such funds, the Debtor will not be able to pay the direct operating expenses needed to carry on its business during this sensitive period in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor asserts that, at this time, the Debtor's ability to use Cash Collateral is vital to the confidence of the Debtor's vendors and suppliers of goods and services, and to the preservation and maintenance of the going concern value of the Debtor's estate.

Good cause has been shown for the entry of this Order. The Court finds that the notice of the Motion and the Hearing on the Motion was sufficient under the circumstances. Entry of this Order is justified and appropriate under the circumstances. Entry of this Order is in the best interest of the Debtor's estate.

IT IS THEREFORE ORDERED AND ADJUDGED as follows:

1.      **Use of Cash Collateral**. Subject to the terms of this Order, the Debtor is hereby authorized to use Cash Collateral during the period (the "Budget Period") beginning January 30, 2023 and ending February 26, 2023, or as provided in any subsequent Interim or Final Order on the Motion. The Debtor is authorized to use Cash Collateral only in the amounts and for the expenses and disbursements set forth in the Budget attached hereto as **Exhibit A**, subject to the Budget Variance (defined below). The Debtor shall not incur expenses or use Cash Collateral in

an amount that exceeds by more than ten percent (10%) the total expenses provided in the Budget for the Budget Period (the "Budget Variance").  For the avoidance of doubt, to the extent the Court authorizes the Debtor to honor prepetition obligations, such amounts will not be counted towards the maximum allowance for expenses in the Budget.

2.      **Replacement Liens**.  Except as otherwise provided herein, as adequate protection to Texas Bank and Trust Company ("Lender") for the Debtor's use of Cash Collateral as permitted herein, to the extent that the Debtor's use of Cash Collateral results in a diminution in value of the Lender's interest in the Cash Collateral as of the Petition Date, Lender is granted a replacement lien ("Replacement Lien") in the Debtor's assets that serve as collateral under Lender's applicable agreements, in the same order of priority that existed as of the Petition Date (the "Replacement Collateral").

3.      **Post-Petition Liens**.  Subject to the entry of a final order on the Motion, Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to Lender with respect to the proceeds, product, offspring, or profits with respect to any Prepetition Collateral.  To the extent it has a valid security interest as of the Petition Date, Lender shall have a post-petition security interest in the proceeds, products, offspring or profits of any such property acquired by the Debtor after the Petition Date.

4.      **No Lien Upon Avoidance Actions**.  Notwithstanding anything herein to the contrary, the Replacement Liens do not extend to the Debtor's transfer or lien avoidance rights and claims under Sections 544, 545, 547, 548, 549 or 550 of the Bankruptcy Code.

5.      **Adequate Protection – Superpriority Administrative Claim.**  As additional partial adequate protection for the Debtor's use of Cash Collateral, to the extent of any diminution in value and a failure of the other adequate protection provided by this Order, the Lenders shall have an allowed superpriority administrative expense claim in this case and any successor case

as provided in and to the fullest extent allowed by Sections 503(b) and 507(b) of the Bankruptcy Code ("Superpriority Claim").

6.      **Carve-Out**.   Notwithstanding anything herein to the contrary, the Replacement Liens and Superpriority Claim are subject and subordinate to a carve-out of funds (the "Carve Out") for:  (a) all fees required to be paid to the Clerk of the Bankruptcy Court, (b) all fees required to be paid to the Office of the United States Trustee pursuant to Section 1930(a) of Title 28, United States Code, and (c) all fees and expenses of the Debtor's professionals, including ordinary course professionals, to the extent such fees and expenses are provided for in the Budget or any subsequent budgets and allowed by Order of the Bankruptcy Court .

7.      **Perfection of Liens**.   The Replacement Liens are, and shall be, valid, perfected, enforceable and effective as of the Petition Date without the need for any further action by the Debtor or the Lenders, or the necessity of execution or filing of any instruments or agreements.

8.      **Survival**.   The terms and provisions of this Order inure to the benefit of, and are binding upon, the Debtor, the Lender, and creditors of the Debtor, and their respective successors and assigns, including, without limitation, any trustee or legal representative of the Debtor appointed in this case or in any superseding case under Chapter 7 of the Code.   This Order is immediately valid and fully effective upon entry by this Court.

9.      **No Waiver**.   Nothing in this Order shall prejudice or waive the right of the Debtor or any other party to contest the amount, validity, or avoidability of the Lender's claims and security interests.   Further, nothing in this order shall prejudice or waive the right of the Lender to object or contest the further use of Cash Collateral after the Budget Period.

10.     **Final Hearing**.   A hearing to consider final approval of the Motion is hereby set for **_____, _____ \_\_, 2023 at \_\_\_\_ \_.m.**   Counsel for the Debtor shall file a notice of hearing and serve it on all parties reflected on the service list.

11.     **Retention of Jurisdiction**.   This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

12.     **<u>Immediate Relief</u>**.   The Debtor has established that the relief granted herein is necessary to avoid immediate and irreparable harm as required by Bankruptcy Rules 4001(b)(2) and 6003.

**### END OF ORDER ###**

L:\BFORSHEY\SanoTech 360 Mtg #6345\Pleadings\Interim Order Granting Use of Cash Collateral 1.29.23.docx

# **EXHIBIT A**
[Interim Cash Collateral Budget]

PROJECT JAI, LLC

**DBA: EMIST**

**CASH FLOW PROJECTION**

| | Jan 30 - Feb 5 | | Feb 6 - Feb 12 | | Feb 13 - Feb 19 | | Feb 20 - Feb 27 | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | BUDGET | ACTUAL | BUDGET | ACTUAL | BUDGET | ACTUAL | BUDGET | ACTUAL | BUDGET | ACTUAL |
| Sales | $ 22,500.00 | | $ 25,000.00 | | $ 22,500.00 | | $ 25,000.00 | | $ 95,000.00 | |
| | | | | | | | | | | |
| Account Receivable Collections - Receipts | $ 12,500.00 | | $ 22,000.00 | | $ 22,500.00 | | $ 20,000.00 | | $ 77,000.00 | |
| | | | | | | | | | | |
| **SUMMARY OF WEEKLY CASH OUTFLOW** | | | | | | | | | | |
| Payroll Gross | $ - | | $ 13,469.23 | | $ - | | $ 13,469.23 | | $ 26,938.47 | |
| Employer Payroll Taxes | $ - | | $ 1,900.00 | | $ - | | $ 1,900.00 | | $ 3,800.00 | |
| Health Insurance | | | $ 2,856.00 | | | | $ 2,856.00 | | $ 5,712.00 | |
| Contract Labor | $ 1,500.00 | | $ 1,500.00 | | $ 1,500.00 | | $ 1,500.00 | | $ 6,000.00 | |
| Processing Repairs & Warranty Orders | $ 750.00 | | $ 750.00 | | $ 750.00 | | $ 750.00 | | $ 3,000.00 | |
| Warehouse Supplies | $ 500.00 | | $ 500.00 | | $ 500.00 | | $ 500.00 | | $ 2,000.00 | |
| Telephone Expense | $ 250.00 | | $ 250.00 | | $ 250.00 | | $ 250.00 | | $ 1,000.00 | |
| Waste Disposal | $ 200.00 | | $ 200.00 | | $ 200.00 | | $ 200.00 | | $ 800.00 | |
| Utilities | $ 450.00 | | $ 450.00 | | $ 450.00 | | $ 450.00 | | $ 1,800.00 | |
| Property Rent | | | $ 8,900.00 | | | | | | $ 8,900.00 | |
| Shipping Cost | $ 1,000.00 | | $ 1,000.00 | | $ 1,000.00 | | $ 1,000.00 | | $ 4,000.00 | |
| Inventory Storage Fees | $ 900.00 | | $ 900.00 | | $ 900.00 | | $ 900.00 | | $ 3,600.00 | |
| Insurance Cost | $ 1,000.00 | | $ 1,000.00 | | $ 1,000.00 | | $ 1,000.00 | | $ 4,000.00 | |
| Travel & Meals | $ 175.00 | | $ 175.00 | | $ 175.00 | | $ 175.00 | | $ 700.00 | |
| Marketing/Advertising | $ 300.00 | | $ 300.00 | | $ 300.00 | | $ 300.00 | | $ 1,200.00 | |
| Office Supplies | $ 125.00 | | $ 125.00 | | $ 125.00 | | $ 125.00 | | $ 500.00 | |
| Miscellaneous Cost | $ 750.00 | | $ 750.00 | | $ 750.00 | | $ 750.00 | | $ 3,000.00 | |
| | | | | | | | | | | |
| **Sub Total of Direct cost** | **$ 7,900.00** | | **$ 35,025.23** | | **$ 7,900.00** | | **$ 26,125.23** | | **$ 76,950.47** | |
| | | | | | | | | | | |
| **Indirect Cost** | | | | | | | | | | |
| Professional Fees | $ - | | $ - | | $ - | | $ 5,000.00 | | $ 5,000.00 | |
| Trustee Fees | $ - | | $ - | | $ - | | $ - | | $ - | |
| Investment Banker Fees | $ - | | $ - | | $ - | | $ 20,000.00 | | $ 20,000.00 | |
| | | | | | | | | | $ - | |
| **Sub Total of Indirect cost** | **$ -** | | **$ -** | | **$ -** | | **$ 25,000.00** | | **$ 25,000.00** | |
| | | | | | | | | | | |
| **Total Disbursements** | **$ 7,900.00** | | **$ 35,025.23** | | **$ 7,900.00** | | **$ 51,125.23** | | **$101,950.47** | |
| | | | | | | | | | | |
| Net Weekly Surplus / (deficit) | $ 4,600.00 | | $ (13,025.23) | | $ 14,600.00 | | $ (31,125.23) | | $ (24,950.47) | |
| | | | | | | | | | | |
| Beginning Balance of Cash | $ 32,550.00 | | $ 37,150.00 | | $ 24,124.77 | | $ 38,724.77 | | | |
| | | | | | | | | | | |
| Projected Cash Balance | $ 37,150.00 | | $ 24,124.77 | | $ 38,724.77 | | $ 7,599.53 | | | |

*Limited Service List*
*SanoTech 360, LLC*
*#6345*

SanoTech 360, LLC
Attn:  George R. Robertson, CEO
6795 Corporation Parkway
Fort Worth, TX 76126

Erin Schmidt, Trial Attorney
Office of the U.S. Trustee
1100 Commerce St., Room 976
Dallas, TX 75202

Elizabeth Young, Trial Attorney
Office of the U.S. Trustee
1100 Commerce St., Room 976
Dallas, TX 75202

Texas Bank and Trust Company
Attn:  Shane Best
300 E. Whaley
Longview, TX 75601

Texas Bank and Trust Company
c/o Patrick Schurr
Sheef & Stone
2600 Network Blvd., Suite 400
Frisco, TX 75034

Texas Comptroller
PO Box 13528
Austin, TX 78711

Tarrant County
100 E Weatherford St.
Fort Worth, TX 76196

Fort Worth ISD
100 N University Dr.
Fort Worth, TX 76107

Internal Revenue Service
Centralized Insolvency Operations
PO Box 21126
Philadelphia, PA 19114-0326

## 20 Largest Unsecured Creditors

All Metals Fabricating
200 Allentown Parkway
Allen, TX 75002

Allied Electronics
PO Box 841811
Dallas, TX 75284-1811

AUSPI Group
417 S. Associated Rd.
Suite 102
Brea, CA 92821

Buckeye Corrugated
PO Box 840931
Dallas, TX 75284-0931

CDW Direct
PO Box 75723
Chicago, IL 60675-5723

Classic Sheet Metal, Inc.
Purchasing
1515 W. Wrightwood Ct.
Addison, IL 60101

FedEx
PO Box 660481
Dallas, TX 75266-0481

Flextronics America, LLC
1000 Technology Dr. West
Columbia, SC 29170

Foley & Lardner LLP
2021 McKinny Avenue
Dallas, TX 75201

Healthcare Surfaces Institute
1156 Heritage Dr
Stevensville, MT 59870

Hydradyne, LLC.
15050 FAA Blvd
Fort Worth, TX 76155-2215

JTaylor
4800 Overton Plaza
Fort Worth, TX 76109-4430

Maxon Precision Motors
125 Dever Drive
Taunton, MA 02780

Micronel USA Inc.
Rick Asal
12115 Insurance Way
Hagerstown, MD 21740

Piller Aimmco
3925 S Grant St.
Washougal, WA 98671

RIM Manufacturing, LLC
901 West I-20
Weatherford, TX 76087

Ryan Tax Compliance Services, LLC
Three Gallery Tower
13155 Noel Road, Suite 100
Dallas, TX 75240

**TCS Micropumps Highfield,
Faversham Road Ospringe
ME13 0SF United Kingdom**

Team Manufacturing - East West
4170 Ashford Dunwoody Rd.
Suite 560
Atlanta, GA 30319

The Specialty Mfg. Co.
Scott Rische
5858 Centerville Rd.
St. Paul, MN 55127

# NOTICES OF APPEARANCE